504 P.2d 516

**ALABAMA NATIONAL LIFE INSURANCE COMPANY, an Alabama corporation, Appellant,**

v.

**A. W. GAMMILL, Appellee.**

**No. I CA–CIV I7I6.**

Court of Appeals of Arizona,
Division 1,
Department A.

Dec. 29, 1972.

Rehearing Denied Jan. 31, 1973.

Review Denied March 6, 1973.

Cox & Cox by Alfred S. Cox, Phoenix, for appellant.

Lewis & Roca by John P. Frank, Douglas Irish and David Rich, Phoenix, for appellee.

STEVENS, Presiding Judge.

In the Superior Court the plaintiff-appellee sought a recovery for attorneys' fees earned and costs advanced. The jury returned its verdict in favor of the plaintiff in the sum of $11,000, a judgment was entered thereon, and in due time this appeal followed.

The two questions basic to this appeal are:

1. Did the trial court commit reversible error in limiting the defendant's discovery rights?; and

2. Did the trial court err in denying the defendant's motion to quash the writ of garnishment?

IDENTITY

There was a complex pyramiding of various corporations, and it is essential that some identities be established early in the opinion. We will also refer to a limited number of lawsuits which played a part in the overall picture.

The Alabama National Life Insurance Company, an Alabama corporation, [Ala–

bama National] the defendant-appellant, and the National Producers Life Insurance Company, an Arizona corporation, [National Producers] which was wholly owned by Alabama National, were part and parcel of the corporate pyramid.

The Phoenix law firm of Lewis & Roca was formerly Lewis, Roca, Beauchamp & Linton. John L. Hay is a partner in the firm. A. W. Gammill is the firm's office manager to whom the firm assigned its claim for attorneys' fees and costs for the purpose of seeking the recovery which is the subject of this appeal. He will be referred to as Gammill or as the plaintiff.

R. Frank Ussery was the Superintendent of Insurance in the State of Alabama.

Charles F. Zukoski, Jr., is an attorney licensed to practice and practicing his profession in Alabama.

Millard Humphrey was the Director of Insurance in the State of Arizona.

On 5 December 1969 Humphrey in his official capacity filed an action under Arizona's Uniform Insurers Liquidation Act [A.R.S. §§ 20–611 to 20–631] against National Producers and therein he was appointed the receiver. This suit will be referred to as the "National Producers suit".

On the same day, and again in his official capacity, he filed a similar action against Alabama National wherein he secured a temporary restraining order and then a preliminary injunction to protect or control 240,638 shares of stock of the Southwestern Savings & Loan Association, owned by Alabama National, which had been placed with The Valley National Bank of Arizona as collateral for a loan. This lawsuit will be referred to as the "Humphrey v. Alabama National suit". No receiver was appointed in the Humphrey v. Alabama National suit.

On 18 March 1970 the instant action was filed seeking to recover attorneys' fees for services rendered and for costs advanced for the period of from 1 October 1969 to 16 March 1970. A writ of garnishment was promptly served on The Valley National Bank of Arizona. In its answer the Bank stated that the only assets of Alabama National which it had was the Southwestern Savings stock which was held as collateral security and which was held subject to the injunction which had issued in the Humphrey v. Alabama National suit. The suit filed on 18 March by Gammill will be referred to as "the suit in issue".

On 28 March 1970 in the Circuit Court of Jefferson County, Alabama, Ussery in his official capacity filed an action against Alabama National pursuant to Alabama's Reciprocal Rehabilitation, Reorganization and Liquidation Of Insurers Act, being §§ 339 to 346 of Title 28, Vol. 7, Code of Alabama, Recompiled 1958. [The Uniform Act, which was subsequently adopted by the State of Alabama, appears on pages 288 to 301, Vol. 9B, Uniform Laws Annotated.] Ussery was promptly appointed as receiver. On 21 August 1970 Zukoski became co-receiver and on 5 November 1970 Zukoski became the sole receiver, except that Ussery retained certain authority with reference to a pending suit in the United States District Court for the District of Arizona and in reference to at least a portion of the Arizona Superior Court litigation. The suit so filed in Jefferson County, Alabama will be referred to as the "Alabama receivership case".

## BACKGROUND

On 25 January 1968 Lewis & Roca became general counsel for Alabama National, a corporation in which certain residents of Phoenix had some management and financial interests. Later, in order to secure additional capital, "the Texas group" made an investment. The exact date of this investment is not clear. In early 1969 the "Watson-Sellers group" entered the financial picture and they had as their counsel Joe T. Pilcher, Jr., of Selma, Alabama.

In about August 1968 there was some restlessness among minority stockholders of Alabama National and suits were threatened and suits were commenced.

The bylaws of Alabama National contained an indemnity provision to reimburse its management and directors for the expense of litigation filed against them. In the initial stages there was a unity defense and Lewis & Roca were employed to represent Alabama National as well as its directors and managing officers. Lewis & Roca billed Alabama National for all of the services and costs and did not allocate a portion thereof to any individual defendant.

In late 1969 with changes in ownership and management and with a developing disagreement between some of the individual defendants it began to appear that the unity defense, appropriate in the beginning, was becoming less appropriate. Lewis & Roca were of the opinion that a conflict of interests was developing.

On the 19th of January 1970 Lewis & Roca appeared in the Alabama Court and secured a comprehensive order authorizing their withdrawal from their responsibilities as the attorneys of record in the various pending lawsuits and directing Lewis & Roca as to the manner of their cooperation with substitute counsel. There were numerous records and special matters to be taken care of.

The Lewis & Roca fees and costs were paid to the end of September 1969 and the suit in issue together with its writ of garnishment was filed on 18 March 1970 for fees earned and costs advanced in the interim. The major portion of the fees claimed in the suit in issue related to the Lewis & Roca services in connection with their withdrawal from their representation of Alabama National in the then pending minority stockholder suits.

Whereas Humphrey was promptly appointed in Arizona as the receiver in the National Producers suit, the order to show cause for the appointment of a receiver in the Humphrey v. Alabama National suit was continued. A hearing was held in the Humphrey v. Alabama National suit before a Superior Court judge, not the judge who presided in the suit in issue, on 1 April 1970. Present were Humphrey; his attorney, the attorneys who represent Alabama National in the suit in issue; Ussery in his official capacity as receiver in the Alabama receivership case; and attorney Pilcher. The injunction in relation to the Southwestern Savings stock was continued in effect. The appointment of a receiver was abandoned, and the lawsuit was ordered held in suspense for 18 months. All of these actions had the full concurrence of all present. Under A.R.S. § 20–617 Ussery had the option to request that Humphrey be appointed as the ancillary receiver, an option which he and the other parties present declined to exercise. Thus, in the State of Arizona no receiver was ever appointed for Alabama National.

In the suit in issue on 4 December 1970 Ussery secured the release of the Southwestern Savings stock from the lien of the garnishment by posting a garnishment redelivery bond. Up to this point no attack had been made upon the validity of the garnishment.

## DISCOVERY

Over objection of the plaintiff, Ussery, in his capacity as the receiver appointed in Alabama, was permitted to defend the suit in issue in the name of Alabama National. He was not substituted as a party-defendant.

Alabama National moved for discovery. Part of the motion requested detailed information as to the services Lewis & Roca had rendered to the individual parties-defendant in the minority stockholders' actions. The plaintiff conceded that Alabama National was entitled to certain information insofar as that information related to Alabama National. The trial court entered an even more restrictive order. On the basis that the claim in litigation commenced as of 1 October 1969, the trial judge's order did not permit discovery of matters prior to that date. The minute

entry order was enlarged by a formal written order as follows:

"Pursuant to Rule 75(h) and to the specific authority granted this Court by order of the Court of Appeals, this Court hereby certifies that, with respect to the minute entry of July 23, 1970, in the above captioned case, the following events transpired at the hearing on that date:

1. No court reporter was present.

2. At the time the Court granted defendant's Motion to Compel Answers and Produce Documents as to matters subsequent to October 1, 1969, and denied that motion as to matters prior to October 1, 1969, the Court advised defendant's counsel that its reason for so ruling was the Court's belief that pre-October 1, 1969 matters were not discoverable under the pleadings as they then stood, but that if defendant amended its responsive pleadings so as to assert an appropriate claim for relief as to pre-October 1, 1969 matters, then the Court would grant the remainder of that discovery motion."

[The reference to the authority granted by the Court of Appeals is this Court's order of 14 June 1971 entered in this current appeal.]

■ The restrictive discovery order was entered on 23 July 1970. The cause went to trial on 12 January 1971. In the meantime John L. Hay, one of the Lewis & Roca partners who was intimately involved in the Alabama National matters, was deposed by the defendant. Much of the litigation in which the firm of Lewis & Roca was involved was litigation pending in the State of Alabama where Ussery, Zukoski and Pilcher were residents. There was no effort to bring the Lewis & Roca firm into the suit in issue as active participants or formal parties. An examination of the reporter's transcript of the trial of the suit in issue reveals that Lewis & Roca had made materials available to the defendant which were beyond the limitations of the order on discovery. Members of the Lewis & Roca firm who were involved in the Alabama National representation testified and were questioned as to the fees paid by Alabama National for services before 1 October 1969 and as to whether it was appropriate to bill Alabama National for all the services or whether there should have been some allocation of the fee expenses to individual defendants. Lawyers who practice in Phoenix were called by both sides to testify as to the reasonableness of the hourly rates of the various lawyers in the Lewis & Roca office, which hourly rates were one of the elements considered in the comprehensive Lewis & Roca fee setting office conferences. There was evidence pro and con as to the fees which can be properly charged by a law firm in the matter of becoming disengaged from representation similar to the Alabama National representation. Zukoski in his capacity as the then present receiver for Alabama National urged that there should not have been a unity defense and in his present official position he was giving aid and comfort to the minority stockholders in their pursuit of the litigation against the management and the directors of Alabama National. Alabama National does not point out the areas wherein their defense was handicapped by the order on discovery. We find error in the order which restricted discovery even in the areas conceded to be appropriate by the plaintiff. It appears that Lewis & Roca did not so restrictively limit the education of Alabama National's Arizona attorneys in the suit in issue. From the entire record we hold that the limitation on discovery was harmless error.

## THE GARNISHMENT

■ The writ of garnishment was issued on 18 March 1970. The Valley National Bank of Arizona filed its garnishee's answer on 27 March 1970. There was a viable receivership of Alabama National in the State of Alabama commencing 28 March 1970. The redelivery bond in release of the garnishment was filed on 4 December

1970. It was 12 January 1971, the day the trial commenced, that Alabama National filed its motion to vacate the garnishment based upon A.R.S. § 20–630 which reads as follows:

"§ 20–630. Attachment and garnishments of assets

"During the pendency of delinquency proceedings in this *or any reciprocal state,* no action or proceeding in the nature of an attachment, garnishment or execution shall be commenced or mainatined in the courts of this state against the deliquent insurer or its assets. Any lien obtained by any such action or proceeding within four months prior to the commencement of any such delinquency proceeding or at any time thereafter shall be void as against any rights arising in the delinquency proceeding." (Emphasis added).

Even at that late date the motion might have been well taken if Alabama and Arizona were reciprocal states in this area of legislation. We have examined the Alabama statutes, the Arizona statutes and the Uniform Act, all of which have been referred to earlier in this opinion. We hold that there are material differences which militate against the holding that at the time in question Alabama and Arizona were reciprocal states. We hold that the appointment of the receiver for Alabama National in the State of Alabama, the fact that the privilege of an ancillary receiver in Humphrey v. Alabama National suit was available and foregone, and the absence of reciprocity in this field of legislation do not permit the utilization of A.R.S. § 20–630 to defeat the garnishment. We do not need to decide the disputed point of law that by posting the garnishment redelivery bond, at least without first attacking the validity of the garnishment, constituted a waiver or abandonment of the right to attack the validity of the garnishment.

The judgment is affirmed.

CASE and JACOBSON, JJ., concur.