Chris **HERSTAM, Director of Insurance for the State of Arizona, as Receiver for AMS Life Insurance Company, an Arizona corporation, Plaintiff–Appellee,**

v.

**BOARD OF DIRECTORS OF the SILVERCREEK WATER AND SANITATION DISTRICT and Silvercreek Water and Sanitation District, a quasi-municipal corporation, Defendants–Appellants.**

No. 93CA2062.

Colorado Court of Appeals, Div. V.

Feb. 23, 1995.

Rehearing Denied April 6, 1995.

Isaacson, Rosenbaum, Woods & Levy, P.C., Juli E. Lapin, Denver, for plaintiff-appellee.

Anthony J. DiCola, Hot Sulphur Springs, for defendants-appellants.

Opinion by Judge ROTHENBERG.

Defendants, the Silvercreek Water and Sanitation District (District) and its Board of Directors (Board), appeal from a preliminary injunction entered in favor of plaintiff, Chris Herstam, Director of Insurance for the State of Arizona, as receiver for AMS Life Insurance Company, an Arizona corporation (AMS). We affirm.

The District is a quasi-municipal corporation created pursuant to § 32–1–101, et seq., C.R.S. (1994 Cum.Supp.). The Board is the governing body for the District.

In March 1990, Indian Meadows Development Company (Indian Meadows), a Colorado corporation, and AMS entered into a loan agreement under which AMS loaned Indian Meadows $725,000. The loan was secured by a deed of trust, assignment of rents, security agreement, and fixture filing, encumbering real and personal property located in Grand County, Colorado (the property). It was further secured by two payment and performance guaranties.

Indian Meadows defaulted on the loan and abandoned the property.

In March 1992, the Superior Court of Maricopa County, Arizona, entered an order appointing the Director of Insurance for the State of Arizona as receiver for AMS. In its order, the Arizona court found AMS insolvent and vested the receiver with authority to rehabilitate AMS under Ariz.Rev.Stat. Ann. § 20–615 (1990).

One of the receiver's responsibilities under the order was to take exclusive custody and control of all assets of AMS and to conserve, hold, and manage those assets to prevent loss and injury to creditors and others with business relationships with AMS. The receiver determined that one such "asset" was AMS' interest in the Grand County, Colorado, property, pursuant to the installment note, the deed of trust, and the other security documents securing the installment note.

The Arizona receivership order also included an injunction which provided, *inter alia,* that during the pendency of the receivership, AMS "and all customers, principals, investors, creditors, stockholders, lessors, and other persons except for the Receiver" seeking to establish or enforce any claim, right or interest against AMS, were enjoined from: (1) commencing, prosecuting, continuing, or enforcing any claim or proceeding against AMS; (2) accelerating the due date of any obligation or claimed obligation, enforcing any lien upon, or taking or attempting to take possession of any property of AMS; (3) and doing any act to interfere with the taking control of, possession, or management by the receiver, or to harass or interfere with the receiver.

In September 1993, the District notified AMS that: (1) water/sewer charges assessed by the District on the property were delinquent; (2) a public hearing would be held on October 12, 1993, if payment were not received in full by that date; (3) at the hearing the District would consider adopting a resolution certifying the delinquent amount to the county treasurer for collection along with the property taxes; and (4) AMS would be required to pay an additional penalty of 30% of the delinquent amount assessed by the county treasurer.

Also, early in the receivership, the District had notified the receiver that certain fees for water taps associated with the property were unpaid, that the District would disconnect the water taps if the fees were not paid, and that it would cost approximately $100,000 to reconnect them.

The receiver then filed this action in Denver District Court seeking injunctive relief to enforce the order for receivership and the injunction previously entered in Arizona.

The receiver relied on the fact that Arizona has adopted the Uniform Insurers' Liquidation Act and that Colorado is a reciprocal state to Arizona. Thus, the receiver contended that it was entitled to an order for injunction pursuant to § 10–3–505, C.R.S. (1994 Repl.Vol. 4A).

Defendants filed a motion for change of venue, claiming that venue was proper in Grand County, Colorado, where the property was located. The court denied defendants' motion.

Following a hearing, the district court entered a preliminary injunction restraining the

District from taking any action to disconnect the water taps, imposing any penalties for the tap fees, adopting a resolution certifying any delinquent water tap fees to the county treasurer for collection with the property taxes, or taking any other action that would threaten the value of the receiver's interest in the property or violate the receivership order.

## I.

■ Initially, we reject defendants' claim that the trial court erred in denying their motion for change of venue.

Defendants claim that venue is proper in Grand County, Colorado, pursuant to C.R.C.P. 98(b)(2). That rule provides:

Action upon the following claims shall be tried in the county where the claim, or some part thereof, arose:

Against a public officer or person specially appointed to execute his duties, for an act done by him in virtue of his office, or against a person who by his command, or in his aid, does anything touching the duties of such officer, or for failure to perform any act or duty which he is by law required to perform.

However, § 10–3–504(5), C.R.S. (1994 Repl.Vol. 4A) provides that "all actions authorized pursuant to [the Colorado Insurers Rehabilitation and Liquidation Act] shall be brought in the district court in and for the city and county of Denver."

■ When there is a conflict between a statute and a rule, the former must govern; rules of court can neither abridge, enlarge, nor modify substantive rights of a litigant. Section 13–2–108, C.R.S. (1987 Repl.Vol. 6A); *Sherman v. City of Colorado Springs,* 729 P.2d 1014 (Colo.App.1986), *aff'd,* 763 P.2d 292 (Colo.1988).

Here, § 10–3–504(5) specifically requires that all actions authorized under the Colorado Act be brought in Denver District court. Accordingly, it governs this action and the trial court properly denied the motion for change of venue.

## II.

■ Defendants next assert that the Arizona receiver lacks authority to obtain an injunction pursuant to §§ 10–3–505 & 10–3–556, C.R.S. (1994 Repl.Vol. 4A). More specifically, defendants argue that Colorado is not a reciprocal state to Arizona and, as such, the Arizona receiver lacks authority to seek an injunction pursuant to Colorado law. Defendants further claim that the Arizona order is not entitled to full faith and credit. Because we conclude that Colorado and Arizona are reciprocal states, we reject defendants' contentions.

### A.

The grant or denial of a preliminary injunction is a decision which lies within the sound discretion of the trial court. Consequently, an appellate court reviewing the issuance of a preliminary injunction will usually do so with great deference to the conclusion reached by the lower court. An appellate court will substitute its judgment for that of the trial court only if the trial court's ruling was manifestly unreasonable, arbitrary, or unfair. However, when the issue under review on appeal concerns only legal, as opposed to factual, questions the trial court's judgment is subject to independent review on appeal. *Evans v. Romer,* 854 P.2d 1270 (Colo.1993).

### B.

U.S. Const. art. IV, § 1, requires that each state give full faith and credit to the public acts, records, and judicial proceedings of every other state. Injunctions against suits in other states that may interfere with the receivership process have been afforded full faith and credit by the United States Supreme Court. *See Underwriters National Assurance Co. v. North Carolina Life & Accident & Health Insurance Guaranty Ass'n,* 455 U.S. 691, 102 S.Ct. 1357, 71 L.Ed.2d 558 (1982).

### C.

The Uniform Insurers' Liquidation Act

The Uniform Insurers' Liquidation Act (the UILA) was adopted by the National

Conference of Commissioners on Uniform State Laws and the American Bar Association as the result of difficulties incurred in the liquidation, rehabilitation, and reorganization of insurance companies with assets and liabilities located in several states. *See generally* Uniform Insurers' Liquidation Act 13 *Uniform Laws Annot.* 322–23 (1986) (prefatory note).

The purpose of the UILA was to eliminate some of these difficulties by providing a uniform act with reciprocal provisions that could be adopted by each state. One area the Commissioners addressed in the UILA was the lack of authority which domiciliary receivers had over out-of-state assets and the dissipation of those assets that would result unless ancillary receivers were appointed in the nondomicile states. *In re Mutual Benefit Life Insurance Co.*, 258 N.J.Super. 356, 609 A.2d 768 (Ct.App.Div.1992); 13 *Uniform Laws Annot.*, *supra*, at 322.

Thus, the UILA was enacted to provide a uniform, orderly, and equitable method of making and processing claims against financially troubled insurers and to provide for fair procedures for rehabilitating the business of such insurers and, if necessary, for distributing their assets. Consistent with the stated purposes, under the UILA, a domiciliary receiver receives title to all property *wherever located* so that title and control over an insurer's business is vested in the commissioner in the domicile state. Creditors in nondomicile states are prevented from gaining unfair preferences by securing attachments of the insurer's property in the foreign state. *In re Mutual Benefit Life Insurance Co.*, *supra;* 13 *Uniform Laws Annot.*, *supra*, at 322–323.

Arizona has enacted the UILA. Ariz.Rev. Stat. § 20–611, et seq. (1990) (the Arizona Act).

### D.

### The Colorado Insurers' Rehabilitation and Liquidation Act

Colorado adopted the UILA in 1955. Colo.Sess.Laws 1955, ch. 172, § 72–18–1, et seq. at 468–74. However, in 1992, the General Assembly repealed and reenacted the UILA, adding, relocating, and eliminating certain sections as the Insurers' Rehabilitation and Liquidation Act, § 10–3–501, et seq., C.R.S. (1994 Repl.Vol. 4A) (the Colorado Act).

The stated purpose of the Colorado Act is similar to that of the UILA. That purpose is to protect the interests of insureds, claimants, and creditors with minimum interference with the normal prerogatives of the owners and managers of insurers, through, *inter alia:*

(b) Improved methods for rehabilitating insurers, involving the cooperation and management expertise of the insurance industry;

. . . .

(e) Lessening the problems of interstate rehabilitation and liquidation of insurers by facilitating cooperation between states in the liquidation process and by extending the scope of personal jurisdiction over debtors of insurers outside this state;

. . . .

(g) The provision of a comprehensive scheme for the rehabilitation and liquidation of insurance companies and those subject to [the Colorado Act] as part of the regulation of the business of insurance, the insurance industry, and insurers in this state.

Section 10–3–501(3), C.R.S. (1994 Repl.Vol. 4A).

### E.

### Reciprocity

At issue here is whether Arizona and Colorado are reciprocal states. If, as the Arizona receiver contends, the states are reciprocal, then the Arizona receiver has authority to seek an injunction pursuant to the Colorado Act. The defendants' position is that, because Colorado has repealed and reenacted the UILA, Colorado is not a reciprocal state and the Arizona receiver may not seek an injunction under the Colorado Act.

We agree with the receiver and hold that Colorado and Arizona are reciprocal states.

The Colorado Act contains, in § 10–3–502(15), C.R.S. (1994 Repl.Vol. 4A) a definition of "reciprocal state," as follows:

'Reciprocal state' means any state other than this state in which, in substance and effect, sections 10–3–517(1), 10–3–551, 10–3–552, 10–3–554, 10–3–555, and 10–3–556 are in force, and in which provisions are in force requiring that the commissioner or equivalent official be the receiver of a delinquent insurer, and in which some provision exists for the avoidance of fraudulent conveyances and preferential transfers.

Thus, in order for a state to be reciprocal to Colorado, § 10–3–502(15) requires only that the reciprocal state have "in substance and effect" provisions similar to those specified in that section.

We conclude that Arizona has "in substance and effect" law that is similar to and required by § 10–3–502(15). *See* § 10–3–517(1), C.R.S. (1991 Repl.Vol. 4A) and Ariz. Rev.Stat.Ann. §§ 20–621 & 20–624 (1990) (liquidation orders); § 10–3–551, C.R.S. (1991 Repl.Vol. 4A) and Ariz.Rev.Stat.Ann. §§ 20–624 & 20–625 (1990) (domiciliary liquidators in other states); § 10–3–552, C.R.S. (1991 Repl.Vol. 4A) and Ariz.Rev.Stat.Ann. §§ 20–619 (1994 Cum. pocket part) and 20–625 (1990) (ancillary formal proceedings); § 10–3–554, C.R.S. (1991 Repl.Vol. 4A) and Ariz.Rev.Stat.Ann. § 20–626 (1994 Cum. pocket part) (claims of nonresidents against domestic insurers); § 10–3–555, C.R.S. (1991 Repl.Vol. 4A) and Ariz.Rev.Stat.Ann. § 20–627 (1990) (claims of residents against insurers domiciled in reciprocal states); and § 10–3–556, C.R.S. (1991 Repl.Vol. 4A) and Ariz. Rev.Stat.Ann. § 20–630 (1990) (attachment, garnishment, and levy of execution).

In addition, Ariz.Rev.Stat.Ann. § 20–615 (1990) provides that the director of insurance may apply to the court for an order appointing the director as receiver of a delinquent insurer and Ariz.Rev.Stat.Ann. § 20–636 (1990) contains provisions concerning voidable transfers. Thus, all of the requirements of § 10–3–502(15) are met.

Although the wording in the Arizona statutes and Colorado statutes is not identical, it is substantially similar and meets the definition of "reciprocal states." Accordingly, we hold that Colorado is a reciprocal state to Arizona. *See Allied Fidelity Insurance Co. v. Ruth,* 57 Wash.App. 783, 790 P.2d 206 (1990) (liquidation statutes of Indiana and Washington were sufficiently similar to make Indiana a reciprocal state under the Washington Uniform Insurers Liquidation Act). *See also Public Service Truck Renting, Inc. v. Ambassador Insurance Co.,* 175 A.D.2d 632, 572 N.Y.S.2d 559 (1991) (Vermont has not enacted the Uniform Insurers Liquidation Act, but its statutory scheme is similar in nearly every material respect affecting reciprocity; thus, Vermont has enacted the Uniform Act in "substance and effect and is a "reciprocal state" within the meaning of the UILA). *But see Krueger v. Tabor,* 546 So.2d 1317 (La.App.1989) (Texas, which had not adopted the UILA, was not a reciprocal state to Louisiana); *Alabama National Life Insurance Co. v. Gammill,* 18 Ariz.App. 575, 504 P.2d 516 (1973) (Alabama and Arizona statutes are materially different; therefore, the two states are not reciprocal).

■ Since Colorado is a reciprocal state to Arizona, the Arizona order must be afforded full faith and credit and the receiver is entitled to apply for an injunction pursuant to § 10–3–505. *See* U.S. Const. art. IV, § 1. *See also Underwriters National Assurance Co. v. North Carolina Life & Accident & Health Insurance Guaranty Ass'n, supra* (ordering North Carolina court to grant full faith and credit to injunction against bringing or prosecuting suits entered by Indiana receivership court). *Cf. State ex rel. Low v. Imperial Insurance Co.,* 140 Ariz. 426, 682 P.2d 431 (Ariz.App.1984) (Under the UILA, when a foreign insurer's home state has adopted the UILA, reciprocity exists so that nondomiciled residents are entitled to the same rights and preferences as citizens of the foreign insurer's home state.).

### III.

■ Defendants also contend that the trial court exceeded the scope of its authority under the Colorado Act in granting the Arizona receiver's motion for a preliminary injunction. Again, we disagree.

Section 10–3–505(1), C.R.S. (1994 Repl.Vol. 4A) grants the court broad authority to enjoin numerous acts, including interference with the receiver and the institution or further prosecution of any actions or proceedings. *See* §§ 10–3–505(1)(c) & (f), C.R.S. (1994 Repl.Vol. 4A). Further, the Arizona order is extremely broad and essentially enjoins all persons from "attempting to terminate any interest of AMS in any of its property or assets. . . ."

Here, after finding that AMS possessed such an asset in Colorado, the trial court enjoined the District from: taking any action to disconnect the water taps from the property; imposing any penalties for the tap fees; or adopting a resolution certifying the delinquent amount due for the water taps to the county treasurer for collection along with the property taxes. Thus, the trial court acted within its authority in issuing the preliminary injunction.

In reaching this conclusion, we reject defendants' contention that the trial court incorrectly relied on *Garamendi v. Executive Life Insurance Co.,* 17 Cal.App.4th 504, 21 Cal.Rptr.2d 578 (1993) as persuasive authority for imposing the injunction. In *Garamendi,* the California Court of Appeals upheld an injunction prohibiting a creditor's suit against partnerships in other forums. In so ruling, the court found that the California courts had jurisdiction over the partnerships for two reasons. First, there was an identity of interest between the insolvent insurance company and the partnership which justified an injunction. Secondly, if the assets of the partnerships were dissipated by litigation with the partnership creditors, there would be a negative impact upon the ability of the Commissioner to reorganize and rehabilitate the insolvent insurance company.

Similarly here, the court order granting an injunction in favor of the receiver prevented the District from taking any action that would have a negative impact on the ability of the receiver to effect a reorganization and rehabilitation of AMS. Thus, while we agree with defendants that the facts of *Garamendi* differ, we nevertheless conclude that the policy considerations enumerated there are similar to those before us and that the trial

court's reliance on *Garamendi* does not require reversal.

*In re Cardinal Industries, Inc. v. Buckeye Federal Savings & Loan Ass'n,* 105 B.R. 834 (Bankr.S.D.Ohio 1989) is also instructive and lends further support for the trial court's ruling. There, in the context of a bankruptcy proceeding, the issue was whether the automatic stay provisions of the bankruptcy statute would be applied to prevent the holders of the first mortgage interests from foreclosing and affecting unrecorded second mortgages held by the debtors.

In holding that the automatic stay did apply to prevent such a foreclosure, the court first noted that: (1) the debtor's second mortgage interests were property of the estate; and (2) they were liens rather than ownership interests. The court then stated:

> The issue then is whether the Defendant's action in foreclosing [the] first mortgage interests are actions which remove directly the Second Mortgage Interests from the Debtor's estates.
>
> The court finds that the provisions of 11 U.S.C. § 362(a)(3) stay the Defendant's actions to foreclose their first mortgage liens where such foreclosures necessarily risk extinguishment of valid, but unrecorded, second mortgages held by either of these Debtors. . . .
>
> [T]he stay . . . is appropriate to give the Debtors a breathing spell to determine how to preserve any existing value in those Second Mortgage Interests for their reorganization process.

105 B.R. at 855.

Similarly, here, albeit in a different context, the trial court found that the District's action of foreclosing on its lien would have the effect of risking extinguishment of AMS' interests. And, similarly, the preliminary injunction merely gives the receiver a breathing spell to organize the relevant assets and to determine how to preserve any existing value in those assets.

Accordingly, we conclude that the trial court did not exceed its authority in granting the receiver's motion for preliminary injunction.

## IV.

■ Defendants next contend the trial court erred in finding that AMS' interest in the property pursuant to the deed of trust, and amendments thereto, constituted one of AMS' assets and thus was subject to the receivership. We disagree.

The Arizona court did not make a factual finding as to what property constituted the assets of AMS in its order appointing the receiver and granting the injunction. Accordingly, we must address whether AMS' interest in the property located in Colorado is an asset within the meaning of the Colorado Act.

Initially, we note that the definition of "general assets" under the Colorado Act is virtually identical to the definition of general assets in the UILA. Section 10–3–502(8), C.R.S. (1994 Repl.Vol. 4A) provides:

*General assets means all property, real, personal, or otherwise,* not specifically mortgaged, pledged, deposited, or otherwise encumbered for the security or benefit of specified persons or classes of persons. As to specifically encumbered property, *general assets includes* all such property or its proceeds in excess of the amount necessary to discharge the sum or sums secured thereby.... (emphasis added)

*See Cherry Creek School District v. Voelker,* 859 P.2d 805 (Colo.1993) (the word "include" is ordinarily used as a word of extension or enlargement); *Exxon Corp. v. Lujan,* 730 F.Supp. 1535 (D.Wyo.1990) (the use of the word "includes" rather than the word "means" in a regulatory definition indicates that what follows is a non-exclusive list which may be enlarged upon). *See also Ballentine's Law Dictionary* 99 (3rd ed.) (1969) ("Assets" is "[t]he property of a natural person or a corporation, real or personal, corporeal or incorporeal....").

Defendants contend that, under the statutory definition, a deed of trust secured by real property is not an asset. Relying upon § 38–35–117, C.R.S. (1982 Repl.Vol. 16A), defendants argue that Colorado is a lien theory state, and AMS has only a lien on the property. Thus, according to defendants, AMS

does not have an asset. We are not persuaded.

In a lien theory jurisdiction such as Colorado, a mortgage, deed of trust, or other interest "intended to secure the payment of an obligation affecting title to or an interest in real property shall not be deemed a conveyance" but is, instead, a lien. Section 38–35–117, C.R.S. (1982 Repl.Vol. 16A). However, the fact that a mortgage or deed of trust is a security interest, rather than an ownership interest in real property, does *not* mean that it is not an asset. The broad statutory language indicates to the contrary.

Further, § 38–35–117 is not part of the Colorado Act, but is included within § 38–35–101, et seq., C.R.S. (1982 Repl.Vol. 16A), concerning "Conveyancing and Recording."

Section 38–35–117 provides:

Mortgages, trust deeds or other instruments intended to secure the payment of an obligation affecting title to or an interest in real property shall not be deemed a conveyance, regardless of its terms, *so as to enable the owner of the obligation secured to recover possession of real property without foreclosure and sale,* but the same shall be deemed a lien. (emphasis added)

Thus, § 38–35–117 generally prohibits a mortgagee from acquiring possession of a mortgaged property until a foreclosure and sale have occurred. *See Martinez v. Continental Enterprises,* 730 P.2d 308 (Colo.1986).

Here, the receiver does not seek to conduct a foreclosure and sale on the property, but seeks only to preserve the status quo of the property until the court may make a further determination of the rights of the parties. Accordingly, defendants' reliance on § 38–35–117 is misplaced.

Reading the provisions of the Colorado Act as a whole, as we are required to do, we conclude that, in the context of the Colorado Act, the definition of "assets" would include AMS' interest in the property, pursuant to the deed of trust.

Such a finding is consistent with the stated purposes of the Colorado Act which require that in order to protect the interests of insureds, claimants, creditors, and the public

with minimum interference, broad and expansive powers be granted the Commissioner and the trial court. *See* § 10–3–501. *See also In re Mutual Benefit Life Insurance Co., supra* (court found it unnecessary to address whether partnership properties were assets of delinquent insurer; purposes of UILA and New Jersey statute provide ample support for injunctive relief issued).

## V.

■ Finally, defendants claim there was insufficient evidence to support granting of the preliminary injunction. We disagree.

The factors a court must consider when deciding whether a preliminary injunction should be granted include: (1) Whether there is a reasonable probability that plaintiff will succeed on the merits; (2) whether there is a danger of real, immediate, and irreparable injury to the plaintiff which is preventable by the injunction; (3) whether the plaintiff has an adequate legal remedy; (4) whether the injunction will preserve the status quo during the time prior to the trial on the merits; (5) whether the public interest would be served by the injunction; and (6) whether the balance of the equities favors the injunction. C.R.C.P. 65(a); *American Television & Communications Corp. v. Manning,* 651 P.2d 440 (Colo.App.1982).

We also recognize that actions to restrain the collection of the public revenue have been discouraged by the courts. *Kendrick v. A.Y. & Minnie Mining & Mill. Co.* 63 Colo. 214, 164 P. 1161 (1917).

Here, the attorney for the receiver testified at the hearing, *inter alia,* that the District's proposed action in proceeding to collect some $15,000 owed for past due water and sewer fees would have an adverse impact on the salability of the loan. The receiver's concern was that, although the amount secured by the deed of trust was over $770,000, "the asset has already been substantially impaired ... [and] if there is any other financial burden ... we will virtually get no money at all when we sell these." The testimony also showed that the receiver was in the process of assessing many assets throughout 17 states, that the additional financial burden imposed by the District would cause the receiver to incur time, energy, and expense on

one particular asset in the estate, and that it would interfere with the overall liquidation of the receivership assets.

The trial court specifically found that if the water tap fees were converted to a tax lien, such a lien would have priority over the receiver's interest in the property. Under these particular circumstances, therefore, there is record support for the trial court's conclusions that there was a danger of real, immediate, and irreparable injury preventable by the injunction, that the receiver did not have an adequate legal remedy, that the public interest would be served by the injunction, and that the status quo should be preserved upon the posting of a $15,000 bond. *See MacLeod v. Miller,* 44 Colo.App. 313, 612 P.2d 1158 (1980) (when injury cannot be rectified by award of damages, an action at law is an inadequate remedy).

Thus, there is sufficient evidence in the record to support the preliminary injunction order.

The order is affirmed.

STERNBERG, C.J., and KAPELKE, J., concur.