The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
January 24, 2019

**2019COA15**

**No. 18CA1772, *Garrou v. Shovelton* — Insurance — Regulation of Insurance Companies — Uniform Insurers Liquidation Act — Insurers' Rehabilitation and Liquidation Act — Liability Risk Retention Act of 1986**

In this interlocutory appeal under C.A.R. 4.2, a division of the court of appeals concludes, as a matter of first impression, that a Colorado court must recognize and give effect to a South Carolina liquidation order granting a stay of all proceedings involving a South Carolina risk retention group when one of the group's policyholders is sued in Colorado, for two reasons. First, both Colorado and South Carolina have adopted the Uniform Insurers Liquidation Act (UILA), which contains a reciprocity provision requiring states to recognize stays in insurance proceedings from other states with the UILA. Second, the Federal Liability Risk Retention Act of 1986 governs risk retention groups and gives a

charter state (here South Carolina) plenary authority to regulate the risk retention group's operations under the charter state's UILA. The division reverses the district court's order denying the request for a stay and remands the case with directions to stay the proceedings as to defendant Lawrence Shovelton, consistent with the South Carolina order.

Court of Appeals No. 18CA1772
Chaffee County District Court No. 16CV30040
Honorable Amanda Hunter, Judge

John L. Garrou and Denice Garrou,

Plaintiffs-Appellees,

v.

Lawrence A. Shovelton,

Defendant-Appellant.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division A
Opinion by JUDGE FREYRE
Bernard, C.J., and Welling, J., concur

Announced January 24, 2019

Wm. Andrew Wills II, P.C., Wm. Andrew Wills II, Colorado Springs, Colorado,
for Plaintiffs-Appellees

Hershey Decker Drake, Kari M. Hershey, Matthew W. George, Lone Tree,
Colorado, for Defendant-Appellant

¶ 1     This is a C.A.R. 4.2 interlocutory appeal of a district court order denying a motion to stay the proceedings.  It arises from a medical malpractice action brought by plaintiffs, John L. Garrou and Denice Garrou, against defendant, Lawrence A. Shovelton, as well as Monarch Anesthesia, LLC (Monarch), and Salida Hospital District (hospital).[1]  Shovelton moved to stay the proceedings based on a South Carolina state court order commencing liquidation proceedings and granting an injunction and automatic stay of all proceedings against his malpractice carrier, Oceanus Insurance Company, and any of Oceanus' policyholders (South Carolina order).  Oceanus is a risk retention insurance group, and Shovelton is one of its policyholders.  We granted Shovelton's petition for interlocutory review because the appealed order involves controlling and unresolved questions of law, and our immediate review will promote a more orderly disposition of this litigation.[2]

---

[1] Neither Monarch nor the hospital joined Shovelton's C.A.R. 4.2 petition.

[2] While the legal issue presented in the Rule 4.2 petition is unrelated to the merits of the malpractice action, the division agrees with Shovelton that proceeding to trial with the automatic stay in place could result in a judgment that is void as a matter of law, thereby requiring the parties to expend considerable additional

¶ 2    Resolution of the petition requires us to answer a novel question: Must a Colorado court recognize and give effect to a South Carolina court's liquidation order concerning a South Carolina risk retention insurance group and its policyholders when one of those policyholders is sued in Colorado?  Our answer is "yes," for two reasons.  First, both South Carolina and Colorado have adopted the Uniform Insurers Liquidation Act (UILA), §§ 10-3-501 to -559, C.R.S. 2018; S.C. Code Ann. §§ 38-27-10 to -1000 (2018), which contains a reciprocity provision requiring states to recognize stays in insurance proceedings from other UILA states.  Second, Oceanus is a risk retention group that was chartered in South Carolina and is governed by the Federal Liability Risk Retention Act of 1986 (LRRA), 15 U.S.C. §§ 3901-3906 (2018).  The LRRA gives a risk retention group's charter state primary authority to regulate the group's operations under the UILA and to issue orders binding a risk retention group and its policyholders in other states where the

---

resources on a second trial.  *Cf. McGuire v. Champion Fence & Constr., Inc.,* 104 P.3d 327, 329 (Colo. App. 2004) (finding that actions against debtors in violation of a bankruptcy stay are void).  Therefore, granting the petition will promote a more orderly disposition of the litigation.  *Triple Crown at Observatory Village Ass'n v. Village Homes of Colo., Inc.,* 2013 COA 144, ¶¶ 14-15.

group conducts business. Accordingly, we conclude that Colorado must recognize and give effect to South Carolina's order and, therefore, we reverse the district court's order denying Shovelton's motion for a stay. We remand the case with directions to stay the proceedings as to Shovelton, and for the district court to determine, in its discretion, whether the Garrous may proceed against Monarch and the hospital without Shovelton.

## I. Relevant Facts and Procedural History

¶ 3    Mr. Garrou was admitted to a Colorado hospital for podiatric surgery, during which Shovelton, a nurse anesthetist, administered a popliteal[3] nerve block. The Garrous allege that Shovelton negligently administered the nerve block and caused Mr. Garrou to suffer permanent injury to his right leg. Consequently, they filed this medical malpractice suit in January 2017 against Shovelton, Monarch, and the hospital asserting claims for negligence and loss of consortium.

---

[3] Popliteal is "of or relating to the back part of the leg behind the knee joint." Merriam-Webster Dictionary, https://perma.cc/7XTD-DK64.

¶ 4    Oceanus is Shovelton's malpractice insurer and is a South Carolina industrial insured captive corporation formed as a risk retention group. It is owned by its policyholder group members throughout the United States. In August 2017, the Director of the State of South Carolina Department of Insurance filed a petition to commence liquidation proceedings against Oceanus, alleging that Oceanus had failed to maintain the required minimum capital and surplus to cover its policyholders; that further business transactions would be hazardous to Oceanus' policyholders, creditors, and the public; and that Oceanus was insolvent under South Carolina law.

¶ 5    On September 21, 2017, a South Carolina court granted the Director's petition, appointed him as liquidator, and issued an order commencing liquidation proceedings. The order imposed an injunction and automatic stay of proceedings "applicable to all persons and proceedings." As relevant here, it prohibited (1) "[t]he institution or further prosecution of any actions or proceedings"; (2) "[t]he obtaining of preferences, judgments, attachments, garnishments, or liens against the insurer, its assets, or its policyholders"; (3) "[t]he levying of execution against its insurer, its

4

assets or its policyholders"; and (4) "[a]ny other threatened or contemplated action that might lessen the value of the insurer's assets or prejudice the rights of policyholders, creditors, or shareholders, or the administration of any proceeding under Chapter 27 of Title 38 of the South Carolina code." The order further provided that "the rights and liabilities of the insurer and its creditors, policyholders, shareholders, members, and other persons interested in its estate become fixed as of the date of entry of the order of liquidation."

¶ 6    While the defendants' motions for summary judgment were pending, Shovelton received a letter from the liquidator dated September 29, 2017, advising him that "all claim matters that you have [with] Oceanus are now stayed." Separately, the Garrous filed a notice of the South Carolina order in October and requested a stay consistent with the order. Monarch and the hospital opposed the stay, arguing that the order was limited to the institution of new proceedings following issuance of the order and that the Colorado suit would not interfere with the out-of-state liquidation proceedings. On November 21, 2017, a magistrate denied

defendants' summary judgment motions and the Garrous' request for a stay.  Neither side appealed the order denying the stay.

¶ 7    On February 8, 2018, the South Carolina court issued an "Order of Clarification."  That order provides as follows:

> It has been brought to the attention of the Court that there is some confusion among the Bench and Bar in other jurisdictions as to whether the injunction and automatic stay set forth in the Order which is "applicable to all persons and proceedings" and which prohibits, among other things, "the institution of further prosecution of any actions or proceedings" includes prohibiting actions against the policyholders of Oceanus which would be the insured physicians which are also referred to as covered providers and additional named insureds of Oceanus Insurance Company.
>
> So as to clarify my Order of September 21, 2017, this Order is to confirm that the automatic stay prohibiting "the institution of further prosecutions of any action or proceedings" includes prohibiting actions or proceedings against the policyholders, covered providers and additional named insureds of Oceanus Insurance Company.

¶ 8    On May 3, 2018, Shovelton filed a motion to stay all proceedings.  He argued that Colorado must give full faith and credit to the South Carolina order because both states have adopted a version of the UILA and are bound by reciprocity under it.  The

6

hospital joined the motion a few days later, and the Garrous filed a motion opposing the stay. The Garrous argued that (1) the court had already ruled on this issue in its November 21, 2017, order; (2) no appeal had been taken from the magistrate's order; (3) the Colorado proceedings did not interfere with the Oceanus liquidation; and (4) any delay would be unjust. The district court denied Shovelton's motion on July 23, 2018, finding that a stay is not required because (1) if the South Carolina order applies to any actions or proceedings against any policyholder, it would be "dangerously broad"; (2) any judgment in Colorado would not affect the assets of Oceanus, but instead would only affect Shovelton's ability to pay the costs of his defense and to receive assistance in paying a claim; and (3) because South Carolina has no jurisdiction over the Garrous, it cannot bind them. Shovelton then moved for C.A.R. 4.2 certification of the court's order denying his motion for stay, and both the district court and this division granted his petition.

## II.  Colorado Must Recognize South Carolina's Liquidation Order

¶ 9    Shovelton contends that the district court erroneously denied his motion for stay because Colorado and South Carolina are

reciprocal states under the UILA, and, thus, Colorado must give full faith and credit to any injunction order in a liquidation proceeding. We agree, but for slightly different reasons. Because Colorado and South Carolina are reciprocal states under the UILA, the statutory language requires Colorado to recognize South Carolina's order. Moreover, the LRRA, which governs risk retention groups, further requires Colorado to honor the South Carolina order.[4] Therefore, we need not decide the constitutional issue. *See Denver Publ'g Co. v. Bd. of Cty. Comm'rs*, 121 P.3d 190, 194 (Colo. 2005) ("[I]t is our obligation and crucial to our exercise of judicial authority that we do not resolve constitutional questions or make determinations regarding the extent of constitutional rights unless such a

---

[4] Shovelton cites two New York cases holding that the South Carolina order should be honored under the doctrine of comity. *Rojas v. Travers Concannon*, No. 805249/2016, 2018 WL 1508861 (N.Y. Sup. Ct. N.Y. Cty. Mar. 27, 2018); *Leon v. Waldman*, No. 805271/2014, 2018 WL 1448077 (N.Y. Sup. Ct. N.Y. Cty. Mar. 23, 2018). The Garrous cite to a different New York case holding the opposite under the doctrine of comity. *Hala v. Orange Reg'l Med. Ctr.*, No. 3221/2014, 2018 WL 2013018 (N.Y. Sup. Ct. Orange Cty. Apr. 23, 2018). Although we agree with the conclusions in *Rojas* and *Leon*, we are not bound by their decisions. *Wal-Mart Stores, Inc. v. United Food & Commercial Workers Int'l Union*, 2016 COA 72, ¶ 17. Moreover, because we decide this case on statutory grounds, we need not address the doctrine of comity.

determination is essential and the necessity for such a decision is clear and inescapable.").

A.     Standard of Review and Applicable Law

¶ 10     Although a district court's decision to grant or deny an injunction generally lies within the sound discretion of the court, where, as here, the issue concerns only legal questions and the facts are not disputed, we review the decision de novo. *Evans v. Romer*, 854 P.2d 1270, 1289 (Colo. 1993). Similarly, we interpret statutes de novo. *Miller v. Hancock*, 2017 COA 141, ¶ 24. In doing so, we give words and phrases their plain and ordinary meanings. *Id.* "If a statute is clear and unambiguous on its face, then we need not look beyond the plain language, and 'we must apply the statute as written.'" *Vigil v. Franklin*, 103 P.3d 322, 327 (Colo. 2004) (citations omitted).

1.     The Uniform Insurers Liquidation Act

¶ 11     The UILA was drafted by the National Conference of Commissioners on Uniform State Laws and the American Bar Association to eliminate difficulties that had arisen during the liquidation, rehabilitation, and reorganization of insurance companies that operated in multiple states. *See Herstam v. Bd. of*

*Dirs.*, 895 P.2d 1131, 1134-35 (Colo. App. 1995) (citing UILA, 13 U.L.A. 322-23 prefatory note (1986)).  The UILA provides "reciprocal provisions that could be adopted by each state" to "provide a uniform, orderly, and equitable method of making and processing claims against financially troubled insurers and to provide for fair procedures for rehabilitating the business of such insurers and, if necessary, for distributing their assets." *Id.* at 1135.

¶ 12    Colorado adopted the UILA in 1955 and repealed and reenacted it in 1992, adding, relocating, and eliminating certain sections as the Insurers' Rehabilitation and Liquidation Act (Colorado IRLA).  *See id.*  The Colorado IRLA defines a reciprocal state as

> any state other than this state in which, in substance and effect, sections 10-3-517(1), 10-3-551, 10-3-552, 10-3-554, 10-3-555, and 10-3-556 are in force, and in which provisions are in force requiring that the commissioner or equivalent official be the receiver of a delinquent insurer, and in which some provision exists for the avoidance of fraudulent conveyances and preferential transfers.

§ 10-3-502(15), C.R.S. 2018.

¶ 13    South Carolina has adopted its own version of the UILA, the South Carolina Insurers Rehabilitation and Liquidation Act

10

(SCIRLA).  S.C. Code Ann. §§ 38-27-10 to -1000 (2018).  Both the

Colorado IRLA and the SCIRLA provide that on motion from a

receiver, a court may grant restraining orders, preliminary and

permanent injunctions, and other orders as necessary.  *See* § 10-3-

505, C.R.S. 2018; S.C. Code Ann. § 38-27-70 (2018).[5]  As well, the

SCIRLA defines reciprocity the same as the Colorado IRLA, except

that it refers to an insurance "director" rather than an insurance

"commissioner."  S.C. Code. Ann. § 38-27-50(17) (2018).

>       2.       Federal Liability Risk Retention Act of 1986

¶ 14       Unlike a traditional insurance company, a risk retention group

is owned and operated by its members — the insureds — and is

---

[5] *Compare* § 10-3-517(1), C.R.S. 2018 (liquidation orders), *and* § 10-3-551, C.R.S. 2018 (domiciliary liquidators in other states), *and* § 10-3-552, C.R.S. 2018 (ancillary formal proceedings), *and* § 10-3-554, C.R.S. 2018 (claims of nonresidents against insurers domiciled in the state), *and* § 10-3-555, C.R.S. 2018 (claims of residents against insurers domiciled in reciprocal states), *and* § 10-3-556, C.R.S. 2018 (attachment, garnishment, and levy of execution), *with* S.C. Code Ann. § 38-27-370 (2018) (liquidation orders), *and* S.C. Code Ann. § 38-27-930 (2018) (domiciliary liquidators in other states), *and* S.C. Code Ann. § 38-27-940 (2018) (ancillary formal proceedings), *and* S.C. Code Ann. § 38-27-960 (2018) (claims of nonresidents against insurers domiciled in the state), *and* S.C. Code Ann. § 38-27-970 (2018) (claims of residents against insurers domiciled in reciprocal states), *and* S.C. Code Ann. § 38-27-980 (2018) (attachment, garnishment, and levy of execution).

governed by the LRRA, 15 U.S.C. §§ 3901-3906 (2018). The LRRA defines a "risk retention group" as "any corporation or other limited liability association . . . which . . . is chartered or licensed as a liability insurance company under the laws of a State and authorized to engage in the business of insurance under the laws of such State" and "has as its owners only persons who comprise the membership of the risk retention group and who are provided insurance by such group." 15 U.S.C. § 3901(a)(4)(C)(i), (a)(4)(E)(i). Risk retention groups are formed "for the purpose of self-insuring" and are made up of "persons or businesses with similar or related liability exposure." *Wadsworth v. Allied Prof'ls Ins. Co.*, 748 F.3d 100, 102-03 (2d Cir. 2014). Congress enacted the LRRA "to decrease insurance rates and increase the availability of coverage by promoting greater competition within the insurance industry." *Preferred Physicians Mut. Risk Retention Grp. v. Pataki*, 85 F.3d 913, 914 (2d Cir. 1996).

¶ 15 Risk retention groups are "subject to a tripartite scheme of concurrent federal and state regulation." *Wadsworth*, 748 F.3d at 103. First, the LRRA preempts state laws that "make unlawful, or regulate, directly or indirectly, the operation of a risk retention

12

group." 15 U.S.C. § 3902(a)(1) (2018). Second, it exempts from preemption the domiciliary or charter state, which it vests with plenary authority to "regulate the formation and operation" of risk retention groups. 15 U.S.C. § 3902(a)(1). "Federal preemption, therefore, functions not in aid of a comprehensive federal regulatory scheme, but rather to allow a risk retention group *to be regulated by the state in which it is chartered,* and to preempt most ordinary forms of regulation by the other states in which it operates." *Wadsworth,* 748 F.3d at 103 (emphasis added). Indeed, consistent with the LRRA, the Colorado IRLA is intended to "protect the interests of insureds," and to lessen "the problems of interstate rehabilitation and liquidation of insurers by facilitating cooperation between states in the liquidation process and by extending the scope of personal jurisdiction over debtors of insurers outside [Colorado]." § 10-3-501(3), C.R.S. 2018.

¶ 16 Third, the LRRA vests some authority over risk retention groups in nondomiciliary states. For instance, the LRRA permits nondomiciliary states to (1) require a risk retention group's registration with the state commissioner for service of process purposes, 15 U.S.C. § 3902(a)(1)(D); (2) require a risk retention

13

group to submit to an examination by the state commissioner to determine the group's financial condition, 15 U.S.C. § 3902(a)(1)(E); and (3) investigate and initiate liquidation proceedings against a risk retention group that does business in the nondomiciliary state when the charter state declines to do so, 15 U.S.C. § 3902(a)(1)(E)(i)-(ii), (F)(i). But overall, the LRRA sharply limits a nondomiciliary state's secondary regulatory authority over risk retention groups, as compared to the "near plenary authority it reserves to the charter[] state." *Wadsworth*, 748 F.3d at 103-04.

## B. Application

We begin by rejecting the Garrous' contention that the reciprocity provision of the Colorado IRLA does not apply to a risk retention group — only to traditional insurers. While we agree that Oceanus is a risk retention group, the parties do not dispute that Oceanus provides liability insurance to its policyholders and, thus, is in the insurance business. And persons subject to the Colorado IRLA include "[a]ll insurers who are doing, or have done, an insurance business in this state," "[a]ll insurers who purport to do an insurance business in this state," and "[a]ll insurers who have insureds resident in this state." § 10-3-503(1)(a), (b), (c), C.R.S.

2018.  Therefore, we discern no meaningful distinction between a risk retention group and a traditional insurer under the Colorado IRLA.

¶ 18     We next consider and reject the Garrous' contention that Colorado and South Carolina are not "reciprocal states" that require each to recognize and give effect to the other's orders.  As noted above, both Colorado and South Carolina have adopted versions of the UILA with substantively similar provisions that authorize the insurance commissioner (or in South Carolina the insurance director) to be the receiver of a delinquent insurer, and to seek restraining orders, preliminary and permanent injunctions, and other orders as necessary.  We conclude from the plain language of both states' UILA statutes that Colorado and South Carolina are indeed reciprocal states.  *See Herstam*, 895 P.2d at 1136 (concluding that because the Colorado and Arizona statutes are "substantially similar" they meet the definition of reciprocal states).  And reciprocal states under the UILA must recognize and give effect to a domiciliary state's order.  *Id.*; *see* § 10-3-505 (allowing a receiver to apply for an injunction and stay for proceedings under the UILA); S.C. Code Ann. § 38-27-70 (same); *see also* § 10-3-556,

C.R.S. 2018 (stating that during the pendency of a liquidation proceeding "in this or any other state," no action "shall be commenced or maintained in this state against the delinquent insurer or its assets"); S.C. Code Ann. § 38-27-980 (2018) (same).

¶ 19    Next, we are not persuaded by the Garrous' contention that the LRRA somehow limits South Carolina's authority to regulate and enjoin Oceanus. We instead conclude the opposite is true — that the LRRA strengthens South Carolina's authority over Oceanus and its policyholders. Recall, Congress enacted the LRRA to give a charter state more control over risk retention groups and to limit noncharter states from infringing on that authority. 15 U.S.C. § 3902(a)(1) (exempting risk retention groups from state law that would "make unlawful, or regulate, directly or indirectly, the operation" but excepting "the jurisdiction in which it is chartered"); *Wadsworth*, 748 F.3d at 106. Thus, contrary to the Garrous' argument, the LRRA limits Colorado's authority, as a noncharter state, to interfere with South Carolina's control over Oceanus. *See Wadsworth*, 748 F.3d at 106 (concluding that applying New York law that interferes with the operation or regulation of an Arizona risk retention group is not authorized under the LRRA); *see also*

*Fla. Dep't of Ins. v. Nat'l Amusement Purchasing Grp., Inc.*, 905 F.2d 361, 363 (11th Cir. 1990) ("Chartered in the group's state of domicile, the risk retention group is regulated primarily by the domiciliary state. The authority of non-domiciliary states to license and regulate risk retention groups is largely preempted.").

¶ 20     Indeed, if a noncharter state like Colorado could ignore the South Carolina injunction and stay of litigation involving a South Carolina risk retention group's policyholder, it would "make it difficult for risk retention groups to form or to operate on a multi-state basis," which is precisely what Congress sought to avoid when it enacted the LRRA. *Wadsworth*, 748 F.3d at 107 (citing *Preferred Physicians*, 85 F.3d at 915-16). As the charter state, South Carolina has the legal authority to regulate the liquidation proceeding, and allowing suits against policyholders in noncharter states, contrary to the South Carolina order, impairs that regulation. In our view, the statutory scheme requires that Colorado respect the power of South Carolina to regulate and control Oceanus' liquidation.

¶ 21     Additionally, the LRRA specifically incorporates the insurance laws of the risk retention group's charter state. First, it defines a

risk retention group as an insurance company that is chartered or licensed "under the laws of a State." 15 U.S.C. § 3901(a)(4). Next, it defines "insurance" as "primary insurance, excess insurance, reinsurance, surplus lines insurance, and any other arrangement for shifting and distributing risk *which is determined to be insurance under applicable State* or Federal law." 15 U.S.C. § 3901(a)(1) (emphasis added). Finally, it also requires a risk retention group to "submit . . . to the insurance commissioner of the State in which it is chartered." 15 U.S.C. § 3902(d)(1). Therefore, the LRRA strengthens rather than diminishes the SCIRLA's and South Carolina's authority over Oceanus and its policyholders.

¶ 22    We are not persuaded that Colorado's or South Carolina's failure to specifically define a risk retention group in their respective UILAs somehow creates a conflict with the LRRA. Notably, neither state's statutes exempt risk retention groups, and the parties agree that a risk retention group is an insurer. Because the LRRA specifically incorporates a charter state's "insurance laws," we discern no conflict. Instead, we view the LRRA and the UILA as working in harmony — where the provisions conflict, the LRRA

18

controls, but where the LRRA specifically incorporates insurance laws of the charter state that are compatible with its provisions or purposes, they are not mutually exclusive. Thus, the LRRA simply strengthens the requirement that Colorado recognize and give effect to South Carolina's order because South Carolina retains exclusive control over Oceanus under the LRRA through the SCIRLA.

¶ 23     Next, while the Garrous are correct that the South Carolina court does not have jurisdiction over them, no one disputes that South Carolina has jurisdiction over Shovelton, who is a policyholder in a South Carolina-chartered risk retention group and a party to this action. The SCIRLA allows South Carolina courts to issue injunctions "necessary and proper to prevent . . . the obtaining of preferences, judgments, attachments, garnishments, or liens against the insurer, its assets, or its policyholders." S.C. Code Ann. § 38-27-70(A)(1)(g). And the LRRA requires a risk retention group to "comply with an injunction issued by a court of competent jurisdiction, upon a petition by the State insurance commissioner alleging that the group is in hazardous financial condition or is financially impaired." 15 U.S.C. § 3902(a)(1)(H). The Garrous have cited no authority, nor have we found any, that precludes a charter

19

state from binding its risk retention group's policyholders. In fact, binding policyholders is logically necessary to prevent numerous judgments against a risk retention group, and nothing in the LRRA can "affect the authority of any Federal or State court to enjoin . . . [the] operation of, a risk retention group that is in hazardous financial condition or is financially impaired." 15 U.S.C. § 3902(e)(2). Moreover, enjoining suits involving policyholders on a nationwide basis is precisely what the South Carolina court intended, as it made clear in its clarification order.

¶ 24    Finally, we are not persuaded that *Smigielski v. Brookwood School, Inc.*, No. 02-209, 2003 WL 1906786 (Mass. Sup. Ct. Apr. 16, 2003), or *Mahan v. Gunther*, 663 N.E.2d 1139 (Ill. App. Ct. 1996), require a different result. Neither case involved a risk retention group like Oceanus, so neither case discussed the applicability of the LRRA. Further, neither the Massachusetts nor the Illinois case involved reciprocity under the UILA.[6]

---

[6] For the same reasons, we find *Gladd v. Landmark Logistics, Inc.*, No. CIV-16-894-D, 2016 WL 6407436 (W.D. Okla. Oct. 28, 2016), the case on which the district court relied, inapposite.

¶ 25    In sum, we conclude that South Carolina has jurisdiction over Oceanus and Oceanus' policyholders, including Shovelton. *Herstam*, 895 P.2d at 1136.  Because South Carolina and Colorado are reciprocal states under their respective UILAs, and because South Carolina is the charter state under the LRRA, we conclude that Colorado must recognize and give effect to the South Carolina order and that the district court erred in denying Shovelton's motion for stay.  However, because nothing in the record shows that Monarch or the hospital is insured by Oceanus, the proceedings as to them are not directly affected by the stay as to Shovelton.  On remand, the district court must enter a stay as to Shovelton.  It must also exercise its discretion to determine whether Shovelton is an indispensable party to the litigation and whether staying the entire case to avoid piecemeal litigation may be required.  *See President's Co. v. Whistle*, 812 P.2d 1194, 1196 (Colo. App. 1991) (explaining that the trial court has discretion to determine whether to stay the entire proceeding or only part of the proceeding); *see also Dawn v. Mecom*, 520 F. Supp. 1194, 1197 (D. Colo. 1981) (noting the desirability of avoiding piecemeal litigation when one

21

action seeks resolution of the entire controversy and the other seeks limited relief).

¶ 26    In reaching our conclusion, we are mindful of the Garrous' claim that an indefinite stay would be unjust and note that once the stay is in place, they may seek relief from the stay in South Carolina.  Indeed, the record shows that the South Carolina court has previously granted relief from the stay to parties in a North Carolina medical malpractice proceeding.[7]

## III.    Conclusion

¶ 27    The order is reversed, and the case is remanded for the district court to stay proceedings as to Shovelton, consistent with the South Carolina order, and to enter any further orders that it deems necessary and appropriate as to the remaining parties.

CHIEF JUDGE BERNARD and JUDGE WELLING concur.

---

[7] South Carolina's Court of Common Pleas for the Fifth Judicial Circuit ultimately vacated the order lifting the stay after the parties settled with the liquidator.